UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                                  :
                                                        :     Chapter 11
BERLIN & DENMAR DISTRIBUTORS, INC.,     :
                                                        :     Case No. 10-15519 (SMB)
                                                        :
                        Debtor.                         :
---------------------------------------------------------------X
BERLIN & DENMAR DISTRIBUTORS, INC.,     :
                                                        :
                        Plaintiff,                      :
                                                        :     Adv. Proc. No. 13-01315 (SMB)
GOLDSTEIN DEVELOPMENT CORP.,            :
                                                        :
                        Defendant.                      :
---------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER REGARDING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**A P P E A R A N C E S :**

ROBINSON BROG LEINWAND GREENE
    GENOVESE & GLUCK P.C.
*Attorneys for Plaintiff*
875 Third Avenue, 9th Floor
New York, NY 10022

        Jonathan W. Rich, Esq.
        Robert M. Sasloff, Esq.
            Of Counsel

BHATIA & ASSOCIATES, P.C.
*Attorneys for Defendant*
38 West 32nd Street, Suite 1511
New York, NY 10001

        Satish Kumar Bhatia, Esq.
        Joseph F. Kasper, Esq.
            Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The plaintiff, debtor Berlin & Denmar Distributors, Inc. ("Berlin"), sold property of the estate to the defendant Goldstein Development Corporation ("Goldstein") at an auction conducted before this Court.  Goldstein subsequently repudiated its winning bid and forfeited its $50,000 deposit pursuant to the Conditions of Sale.  The back-up bidder, Angus America, Inc. ("Angus"), also defaulted and forfeited its $78,000 deposit.  After Berlin sold the property for $315,000 less than Goldstein's bid, it commenced this adversary proceeding to recover the price difference plus the additional rent and expenses Berlin was forced to pay for the period between Goldstein's breach and the eventual sale.

Both sides have moved for summary judgment on the issue of whether Berlin is entitled to additional damages, and Goldstein has also moved for summary judgment to recover its attorneys' fees and expenses.  For the reasons that follow, the Court grants Berlin's motion to the extent of concluding that it is entitled to recover damages in excess of the retained deposits, but the amount of its additional damages, if any, requires an evidentiary hearing.  Goldstein's motion is denied in all respects.

## BACKGROUND

Unless otherwise indicated, the following facts were found by this Court in a bench decision rendered after a trial concerning Goldstein's application to recover its deposit.  The District Court affirmed this Court's order in all respects.  *See Goldstein Dev. Corp. v. Berlin & Denmar Distribs., Inc.*, No. 13 Civ. 2310(LGS), 2013 WL 3948686 (S.D.N.Y. July 31, 2013).

At all relevant times, Berlin operated a food distribution business from cooperative units located at the Hunts Point Cooperative Market ("Hunts Point").  It commenced this chapter 11 case on October 21, 2010.  Berlin eventually entered into a contract to sell three of its

2

cooperative units (the "Units") to Tri-Boro Veal Packers, Inc. for $675,000 subject to higher and

better offers, *i.e.*, an auction.  On March 1, 2012, Berlin filed a plan modification that substituted

Angus for Tri-Boro Veal Packers as the proposed vendee at a reduced purchase price of

$625,000.  (*See Modifications to Debtor's Second Amended Plan of Liquidation*, dated Mar. 1,

2012 (ECF (Main Case) Doc. # 152).)[1]

The Conditions of Sale governing the auction were set forth in the approved disclosure

statement and the proposed plan.  To the extent relevant to the current dispute, they required each

Qualified Competing Bidder to pay Berlin a $50,000 "Deposit."  (Plan § 6.9(I)(h).)[2]  The

Conditions of Sale further provided that if any Qualified Competing Bidder became the

"Purchaser," the Deposit would be deemed non-refundable and "shall be forfeited to the Debtor

if such Purchaser fails to close for any reason whatsoever."  (Plan § 6.9(I)(j).)

The Court conducted a competitive auction on March 7, 2012.  Goldstein made the

winning bid of $940,000 and became the Purchaser within the meaning of the Conditions of

Sale.  It also increased its deposit from $50,000 to $94,000, an amount that reflected 10% of the

purchase price.  Angus, who had bid $930,000, became the back-up bidder.

Shortly after the auction, Berlin's counsel advised the lawyers for Goldstein and Angus

about the requirements Hunts Point intended to impose on the purchaser of the Units.  Among

other things, Hunts Point informed Berlin's counsel (who informed both bidders) that the Units

required at least $150,000 of renovation work.  In addition, the purchaser had to provide a three-

month security deposit.  (*Supplemental Declaration of Robert M. Sasloff in Further Support of*

---

[1]        "ECF Doc." refers to the electronic docket in this adversary proceeding, and "ECF (Main Case)" refers to
the electronic docket in the bankruptcy case.

[2]        A copy of the "Plan" is available at ECF (Main) Doc. # 127).

*Plaintiff's Motion for Summary Judgment*, dated Apr. 25, 2014 ("*Sasloff Supplemental Declaration*"), at ¶ 10 & Ex. A (ECF Doc. # 36).)  While Goldstein's bid was still alive and outstanding, Berlin also negotiated with Angus over the requirements imposed by Hunts Point, and offered to accept $780,000 if Angus paid $150,000 to satisfy the cure costs and the deposit requirement.  (*Id.* at ¶ 17 & Ex. F.)

Goldstein subsequently repudiated its bid on April 28, 2012, and Berlin forfeited the entire $94,000.  Berlin then sought to finalize its back-up deal with Angus.  The parties ultimately agreed on a price of $780,000, and the Court approved the sale to Angus as part of the confirmation of Berlin's plan.  (*Findings of Fact, Conclusions of Law and Order Confirming Debtor's Second Amended Plan of Liquidation*, dated May 24, 2012, at  2–3, 5 (ECF (Main Case) Doc. # 166).)  Angus subsequently withdrew its bid in August 2012, and Berlin retained Angus' $78,000 deposit.  (*Sasloff Supplemental Declaration* ¶ 33.)  On October 12, 2012, Berlin sold the property to another buyer, Westside Foods, Inc., for $625,000, $315,000 less than Goldstein's bid.

Contesting the forfeiture, Goldstein filed a motion to recover the entire $94,000 deposit.  Following an evidentiary hearing, the Court found that Goldstein had repudiated its bid, and hence, forfeited the Deposit.  However, because the Deposit was defined as $50,000 under the Conditions of Sale, the forfeiture was limited to $50,000, and Berlin was directed to return the $44,000 balance.  Goldstein appealed to the District Court which affirmed this Court's order in all respects.

Berlin commenced this adversary proceeding on March 29, 2013.  (*See Complaint*, dated Mar. 29, 2013 (ECF Doc. # 1).)  After reciting the relevant historical facts, the *Complaint*

4

alleged, in the main, that Goldstein's repudiation breached the parties' contract, and Berlin suffered damages. (*Id.* ¶¶ 80–89.) Its damages included the $315,000 difference between Goldstein's bid and the amount paid by Westside Foods plus six months of additional rent, at $16,882.52 per month, which Berlin had to pay Hunts Point between the auction date and the date it sold the Units to Westside Foods. (*Id.* ¶¶ 87–89.) Because Goldstein's appeal from the Court's earlier order was still pending, Berlin did not offset the forfeited $50,000 Deposit but implicitly recognized that the Deposit would reduce its damage claim by $50,000 if the Court's order was affirmed. (*Id.* ¶ 89 n. 3.) The *Complaint* also included a separate count to recover attorneys' fees and costs in an undetermined amount but believed to be no less than $5,000. (*Id.* ¶¶ 90–92.)

Goldstein denied most of the material allegations in the *Complaint*, and asserted six affirmative defenses and three counterclaims. (*See Verified Answer*, dated May 13, 2013 (ECF Doc. # 5).) The First Counterclaim alleged that Goldstein had suffered consequential damages because Berlin's failure to return the entire $94,000 deposit prevented Goldstein from investing in other real estate ventures, and demanded judgment in the sum of $500,000. (*Id.* ¶¶ 123–25.) The Second Counterclaim alleged that Goldstein incurred substantial attorneys' fees and legal expenses because Berlin failed to return the $94,000 deposit, and demanded $25,000 "towards legal fees and other incidental expenses." (*Id.* ¶¶ 127–28.) The Third Counterclaim alleged that Berlin's failure and refusal "to return $94,000.00, particularly $44,000.00 as ordered by this Court is wanton, oppressive, in bad faith and intentional," and demanded punitive damages. (*Id.* ¶¶ 130–31.)

Berlin subsequently moved for summary judgment. It contended that by repudiating its bid, Goldstein breached its contract to buy Berlin's cooperative units, and Berlin was entitled to

5

recover the difference between Goldstein's bid and the sale price to Westside Foods in addition

to the extra rent it had to pay to Hunts Point.  Berlin conceded that Goldstein was entitled to a

credit in the amount of the $50,000 Deposit and the $78,000 Angus deposit.  (*Plaintiff's*

*Memorandum of Law in Support of Its Motion for Summary Judgment*, dated Jan. 24, 2014

("*Plaintiff's Memo*"), at 17–20 (ECF Doc. # 22).)  Goldstein, in turn, argued that the *Complaint*

should be dismissed, and in the alternative, that it should get the same $150,000 credit that

Angus received from Berlin against any damages awarded to Berlin.  Finally, Berlin sought

summary judgment dismissing Goldstein's counterclaims as a sanction pursuant to Rule 37 of

the Federal Rules of Civil Procedure based upon its failure to respond to Berlin's discovery

requests.  (*Id.* at 21–22.)

Goldstein cross-moved for summary judgment dismissing the *Complaint*.  It dropped its

First and Third Counterclaims, but also cross-moved for summary judgment on its Second

Counterclaim to recover its legal fees and expenses.

## DISCUSSION [3]

### A.   Standards Governing Summary Judgment Motion

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary

proceeding by FED. R. BANKR. P. 7056, governs summary judgment motions.  "The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a). [4]  The

---

[3]      This adversary proceeding concerns Berlin's right to recover contract damages under the Conditions of
Sale governing the auction conducted by the Court.  Hence, it arises in a case under the Bankruptcy Code, and the
Court has core jurisdiction.

[4]      The motions are governed by the amendments to Rule 56 that became effective on December 1, 2010.
Although some language has changed, the standard for granting summary judgment remains unchanged and the

moving party bears the initial burden of showing that the undisputed facts entitle it to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). If the movant carries this initial burden, the nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In deciding whether material factual issues exist, all ambiguities must be resolved and all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec.*, 475 U.S. at 587.

This Court has already determined after trial that Goldstein defaulted by repudiating its bid, and the District Court affirmed. The District Court's order is final and no longer subject to appeal. Although Goldstein's submission on the current motions tries to relitigate the fact of its default, it is collaterally estopped from doing so. The only question presented by Berlin's motion is whether the Conditions of Sale allow Berlin to recover its ordinary contract damages in excess of the Deposit.

This is a question of contract law. When asked to interpret contractual language on a motion for summary judgment, the question is "whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010). A contract is ambiguous if it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

---

amendments will not "affect continuing development of the decisional law construing and applying these phrases." FED. R. Civ. P. 56 advisory committee's note (2010).

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods*, 309 F.3d at 83 (internal quotation marks omitted); *accord Cont'l Ins. Co.*, 603 F.3d at 180; *Maverick Tube*, 595 F.3d at 466. "[E]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *Maverick Tube*, 595 F.3d at 466 (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)).

"There is no 'rigid rule' prohibiting a trial court from interpreting an ambiguous contract on summary judgment." *Renfrew v. Hartford Acc. and Indem. Co.*, 406 F. App'x. 227, 228 (9th Cir. 2010). "A court may . . . grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000); *see also Renfrew*, 406 F. App'x. at 228 (summary judgment is appropriate if there is no genuine issue of material fact presented through extrinsic evidence); *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) ("To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case.").

**B.    The Parties' Contract**

Unlike many bankruptcy sales, Goldstein and Berlin did not enter into an asset purchase agreement, and the Conditions of Sale did not require the successful bidder to do so.

8

Accordingly, their contract consisted of Goldstein's bid (the offer) and Berlin's acceptance as confirmed in the order approving the sale. (*See Order Confirming the Results Of Debtor's Public Sale of Cooperative Units Located at 355 Food Center Drive, Hunts Point Cooperative Market, Bronx, New York*, dated Mar. 22, 2012 (ECF (Main Case) Doc. # 158).) The Conditions of Sale governed the parties' rights.

The Conditions of Sale are silent on the question presented. While they provide for the forfeiture of the Deposit, they do not describe the forfeited Deposit as "liquidated damages" or as Berlin's exclusive remedy, or state whether Berlin can recover additional damages. Moreover, at oral argument, both sides stated that no extrinsic evidence existed to resolve the ambiguity created by this silence. Accordingly, the resolution of the ambiguity is ripe for determination on the cross-motions for summary judgment.

Under New York law, and with certain exceptions not relevant, a prospective purchaser who defaults on a *real estate* contract without lawful excuse forfeits his deposit, even where the contract does not contain a forfeiture clause. *Maxton Builders Inc. v. Lo Galbo*, 502 N.E.2d 184, 186 (N.Y. 1986); *Lawrence v. Miller*, 41 Sickels 131, 140 (N.Y. 1881); *see Uzan v. 845 UN Ltd. P'ship*, 778 N.Y.S.2d 171, 176 (N.Y. App. Div. 2004) ("[R]eal estate down payments have been subject to limited supervision. They have only been refunded upon a showing of disparity of bargaining power between the parties, duress, fraud, illegality or mutual mistake."). The rule is based on the maxim that a defaulting party cannot sue to recover for its own breach. *Maxton*, 502 N.E.2d at 186 ("For more than a century it has been well settled in this State that a vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment."); *Lawrence*, 41 Sickels at 140 ("To allow a recovery of this money would be to sustain an action by a party on his own breach of his own contract, which the law does not

allow."). The rule of *Lawrence/Maxton* has also been applied to contracts for the sale of property held in cooperative ownership that are technically not sales of real estate, *see Shehadi v. Lifson*, No. 10 Civ. 4571(SHS), 2011 WL 4425393, at *5 (S.D.N.Y. Sept. 22, 2011) (collecting cases), and underlies the earlier rejection of Goldstein's effort to recover its deposit.

The *Lawrence/Maxton* rule benefits the aggrieved seller who suffers less damage than the amount of the deposit or suffers no damage at all. It does not, however, limit the seller's right to recover ordinary contract damages. *See Food Mgmt. Group., LLC v. Matrix Realty Grp., Inc. (In re Food Mgmt. Grp., LLC)*, Adv. No. 05–08636 (ASH), 2007 WL 4352225, at *4 (Bankr. S.D.N.Y. Dec. 10, 2007) ("*Maxton Builders* and its progeny *do not* stand for the proposition that a seller's recoverable damages arising from a prospective buyer's breach are limited to a ten percent down payment.") (emphasis in original). To the contrary, unless the vendor has elected to accept the deposit as liquidated damages and as its exclusive remedy, the vendor may recover the difference between the contract price and the market value of the property at the time of the breach, less any deposits paid by the purchaser. *White v. Farrell*, 987 N.E.2d 244, 249 (N.Y. 2013). Furthermore, liquidated damages must be expressly agreed to and will not be implied. *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 109–10 (2d Cir. 1985); *Food Mgmt. Group., LLC*, 2007 WL 4352225, at *4; *Consol. Rail Corp. v. MASP Equip. Corp.*, 486 N.Y.S.2d 4, 6 (N.Y. App. Div. 1985), *aff'd*, 490 N.E.2d 514 (N.Y. 1986). Because the Conditions of Sale do not expressly limit Berlin's remedy to the retention of the Deposit, a limitation cannot be implied, and Berlin is entitled to recover its contract damages after giving due credit for the Deposit, and as acknowledged by Berlin, the Angus deposit.

Goldstein's contrary arguments lack merit. First, it contends that this Court has already decided that the Deposit constituted liquidated damages and Berlin cannot recover anything

10

more.  In directing the forfeiture of the Deposit and the return of the $44,000 balance to

Goldstein, the Court referred to the Deposit as liquidated damages, (Transcript of hearing, held

Jan. 23, 2013 ("Tr."), at 78 (ECF (Main Case) Doc. # 215)), noted that the estate was still out

$200,000 even after forfeiting the Angus deposit, (*id.* at 80), and ended its ruling with the

statement that it had considered the parties' remaining arguments and concluded that they lacked

merit (*id.*).  Goldstein argues that the Court would not have ordered the return of the $44,000 if

Berlin was entitled to additional damages, and hence, the Court has decided that Berlin is not

entitled to additional damages.  (*See Declaration of Joseph F. Kasper [etc.]*, dated Feb. 17, 2014,

at 19 of 27 (ECF Doc. # 28).)

Goldstein takes the reference to liquidated damages out of context.  The Court was

referring to the limitation on the forfeiture of the $94,000 deposit to the $50,000 Deposit in

accordance with the terms of the Conditions of Sale.  (Tr. at 80) ("[T]here is nothing inconsistent

in requiring a larger contract deposit but limiting the forfeiture in the form of liquidated damages

to a lesser amount.").  The Court did not decide that the forfeiture of the Deposit was Berlin's

exclusive remedy, and in fact, expressly declined to reach the issue.  (*Id.* at 70–71 ("Does the

forfeiture provision say that these are all the damages you can recover?  Because if you'd

suffered damages and the forfeiture isn't the liquidated damages clause which cuts off further

damages, I assume you could pursue Goldstein for that.  *I'm not going to decide that.*")

(emphasis added).)  The only issue presented to the Court was Goldstein's right to the return of

the $94,000 deposit, and that is the only issue the Court decided.[5]

---

[5]    Contrary to what Goldstein implies, the Court could not have allowed Berlin to retain the $44,000 as
security or as an offset for additional damages that Berlin had neither formally asserted nor proved; Berlin would
have had to commence an adversary proceeding and obtain an order of attachment.

Second, Goldstein is not entitled to a $150,000 credit based on the unconsummated deal between Angus and Berlin. The Bankruptcy Code requires the trustee, a term that includes the debtor in possession, *see* 11 U.S.C. § 1107(a), to cure any defaults in connection with the assumption and assignment of an unexpired lease or executory contract. 11 U.S.C. § 365(b)(1)(A), (f)(2)(A). Angus agreed to pay those costs directly. Goldstein never negotiated a similar deal and had it consummated its bid—which it did not—Berlin would have had to pay the cure costs. Furthermore, Angus also defaulted, and consequently, Berlin never got the benefit of Angus' agreement to absorb the cure costs.[6]

Accordingly, I conclude that Berlin is entitled to recover its contract damages to the extent they exceed the deposit. Berlin has failed, however, to provide proof of its damages on this motion. It assumes they represent the difference between the Goldstein bid and the ultimate sale price (plus additional rent), but this may not be the case. Berlin sold the Units several months after Goldstein's breach, and the relevant measure is the market value at the time of the breach. *"The price obtained by the vendor on a later resale of the property may be regarded as competent evidence of its fair market value on the date of the purchaser's breach, provided that the market conditions are similar and the time elapsed between the date of the breach and the date of the resale is not too great."* White v. Farrell, 987 N.E.2d at 249 (emphasis in original) (quoting 13 Lord, Williston on Contracts § 66:80 (4th ed. 1995)). In addition, the terms of the Westside Foods sale may differ from the terms of the Goldstein contract. *Procopis v. G.P.P. Rests., Inc.*, 352 N.Y.S.2d 230, 232 (N.Y. App. Div. 1974). Berlin is directed to consult with

---

[6]    The cure costs may be relevant in determining the amount of Berlin's damages. If Westside Foods absorbed the cure costs, *i.e.*, Berlin did not have to pay them, the actual difference between Berlin's bid and Westside Foods' price would shrink.

12

counsel for Goldstein and provide chambers with several possible, mutually convenient dates to conduct the inquest contemplated by this decision.

**C.      Goldstein's Cross-Motion**

Goldstein's cross-motion for summary judgment is denied.  It has failed to point to any contract, statute or rule in support of its request to deviate from the American Rule and compel Berlin to pay its attorneys' fees and expenses.

So ordered.

Dated: New York, New York
       May 23, 2014

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge